MCDUFFEE *v.* McDUFFEE.

1. DIVORCE—CRUELTY—CONDONATION OF ADULTERY.
    In reminding his wife, in the presence of her children, of an
    act of adultery that the husband, with knowledge, had con-
    doned, in falsely accusing her of further misconduct, and at-
    tempting to influence her minor children against her, defend-
    ant was guilty of extreme cruelty.[1]

2. SAME—CONDONATION.
    The husband condoned her offense by subsequently living with
    the wife after obtaining full information thereof.

3. SAME—ALIMONY.
    An award of permanent alimony, consisting of 50 acres of land
    owned by husband and wife by the entirety, and 20 acres of
    defendant's property which included an estate of remainder
    in 95 acres worth about $10,000, 70 acres worth $4,200, held
    by entireties, and personal property worth $3,000, and a
    further award of $16 per month for the support of the chil-
    dren, was justified by the testimony.

Appeal from Ottawa; Padgham, J. Submitted Janu-
ary 12, 1912. (Docket No. 58.) Decided March 29, 1912.

Bill by Susie McDuffee against Daniel McDuffee,
Junior, for divorce. From a decree for complainant, de-
fendant appeals. Affirmed.

*Lillie & Osterhous,* for appellant.

*Corie C. Coburn,* for appellee.

MOORE, C. J. The questions involved in this divorce
proceeding are so clearly stated by the trial judge that we
cannot do better than quote from his opinion, as follows:

"The complainant files her bill in this cause for a divorce
from defendant, charging and alleging cruelty by per-
sonal violence, and also by calling her vile and obscene

---

[1] Charge of adultery as ground for divorce, see note in 34 *L.* R.
A. (N. S.) 860.

names. The defendant filed his answer to said bill, denying specifically the charges of cruelty toward her, as by her alleged, and in said answer filed his cross-bill, asking affirmative relief, and stating that he was married to complainant on the 15th day of December, A. D. 1900, and lived with her until the 31st day of December, 1909, and part of that time she refused to cohabit with him as husband and wife; that there were four children from said marriage, to wit: Herschel, aged 8 years; Harris, aged 7 years; Hilda, 4 years; and Daniel, aged 2 years. He further charges in said cross-bill that complainant, disregarding her marriage vows, committed adultery with one Leo L. Brown, a hired man, on, to wit, the 14th day of March, 1909, at their home in said county; that said Leo L. Brown pleaded guilty to the said charge of adultery at the March term of said circuit court for Ottawa county, and also that complainant, at the same term of said court, pleaded guilty to the said charge of adultery with said Brown. He further alleges in his cross-bill that said Brown was sentenced to imprisonment in State prison, and that complainant was let off on suspended sentence, upon his (defendant's) filing a bond for her release. Defendant claims he obtained her release, because he did not want his children disgraced by having it said of their mother that she was imprisoned for such a crime, etc.; that he took her home to keep peace in the family, and in the hope that the lesson thus taught would be sufficiently severe to make said complainant see the error of her ways, etc., and become a true wife and mother, but that the reverse has been the result. He also, in said cross-bill, charges her with cruelty in divers ways, and that his health has become impaired from such treatment. Issue being joined on the original bill, answer, and cross-bill, the cause came on to be heard on pleadings and proofs taken in open court. A number of witnesses were sworn and gave testimony on the part of both the parties, as also the said complainant and defendant were each sworn and testified in their own behalf. After a careful examination of all the proof offered in the case, I am of the opinion that the defendant, in various ways, has been guilty of extreme cruelty toward complainant substantially as alleged in her bill, and is entitled to the relief prayed for therein.

"As to the defendant's cross-bill, the main claim by defendant, for which he claims to be entitled to a divorce

from complainant, is the fact of the adultery with Brown. Proofs were offered upon this branch of the defense, and from such proof there seems to be no doubt that she was guilty as charged. Brown also was shown to be guilty, and was sent to prison. Defendant was persistent in saving his wife from a prison sentence, and entered into a bond for her good behavior and for her return to his home and family, conditional for her appearance at court, from time to time, to receive sentence, if her conduct should deserve it. On the application of defendant, she was finally discharged and released without sentence. I am satisfied from the proof in the case that since her said discharge and release the complainant has been true to her husband and an exemplary mother to her children; that defendant has falsely accused her of running after Brown since his discharge from prison, and has continually thrown up to her the false step she took with Brown, when she fell into the sin of incontinence toward her husband. It was inconsistent with the professed regard he had for her, and his seeming great desire he had to shield her name when he gave the said bond, that his children might not be disgraced by her false step. The proofs, however, show conclusively that he lost no time in spreading it before his children (young as they were), and persisted in attempting to instill into their minds what a wicked woman their mother was and had been in her conduct with Brown. These children were too young to comprehend anything about the sin of their mother, and when their father brought her home to care for them as their mother, it certainly was the last thing for him to do to blazon her offense before them publicly and bring her into deeper disgrace, and weaken her influence for good over them, which she was striving to do. The offense of adultery, by his own testimony, had been condoned, and was no defense proper in his said cross-bill. He had cohabited with her as husband and wife with full knowledge of her former adultery. Believing, as I do, from the proofs in this case, that the complainant was trying to lead a pure life, and living true to her husband, and from the fact that her offense had been condoned by him, to make public to his children, too innocent to look upon her only as their mother, was and is extreme cruelty, and his cross-bill should be dismissed. At the time of taking proofs in the main case, testimony as to the value of the defendant's property was also gone into, and from which, it ap-

pears, that he had personalty to the amount of nearly $3,000; that he had a deed from his father and mother of a farm of about 95 acres, worth at a conservative estimate $10,000. This, however, is subject to a life lease to the parents, with whom the defendant lives, and has lived since the suit. Defendant pays the taxes and $240 per year for rent of this farm. There is a mortgage of $1,000 on this farm to his mother, which, in all probability, will never have to be paid. The old people are along in years, the father about the age of 80 years, and the mother about 70 years. At their decease, this property becomes the defendant's. Defendant also owns, besides this farm, 70 acres, upon which he lived while living with his wife, and which 70 acres are near the old farm, above mentioned. This 70 acres consists of two parcels, the first of 20 acres, which the defendant bought the same year he was married, paying $700 for it, $200 down, and subject to a mortgage of $500. This was all the defendant had at the time of his marriage. The second piece is parcel of 50 acres, which is held by the parties in entireties; the 50 acres costing them something like $2,500. There is still a mortgage on the two pieces together, viz., the 70 acres. The testimony as to the value of this 70 acres put it at about $4,200, being $60 per acre. The complainant has always worked with defendant in accumulating this property. Her interest in the 50 acres would be, at the rate of $60 per acre, $1,500; his interest is the same. The defendant has a permanent home with his people (a favorite son), and the control and management of a good farm, worth at least, as before stated, $10,000, and well stocked with cattle, horses, tools, and machinery, some debts, which are not pressing, and which he is able to meet. The complainant has three children to take care of, feed, clothe, and educate. She is entitled to their custody until they, respectively, arrive at the age of 14 years.

"As permanent alimony to complainant, she will be allowed the full unincumbered title to the 50 acres mentioned, which is now owned by the parties in the entireties. She will also be allowed the unencumbered title to the 20 acres spoken of in the proofs in this case, making the 70 acres in all, which she will be allowed as her permanent alimony in full, and in full of all dower in defendant's other property. The defendant will also pay to the complainant as alimony, and for partial support (with the mother) of the three children now living, the sum of

$16 per month, payable monthly in advance, the first payment to be made on the 1st day of July, 1911, to be reckoned from that date, and payable on the first day of each succeeding month from thence on until said children shall arrived at the age of 14 years, respectively, or until further order of this court."

The case was argued at length orally by zealous counsel. The printed record of about 150 pages has been examined with care. It would profit no one to refer in detail to the testimony. We shall content ourselves with saying that we think the findings of fact as made by the judge are established by a clear preponderance of the testimony. The only question about which we hesitate is whether it would not be better to decree complainant a sum of money for alimony and a monthly payment to her for the support of the children. The trial judge had the great advantage of seeing and hearing the parties to the litigation and their witnesses. After full consideration, we have decided to allow the decree to stand as made.

The decree is affirmed, with costs.

STEERE, McALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.