MACKENZIE v. MACKENZIE.

1. DIVORCE—MORALS OFFENSE—CONDONATION.

Wife who continued the marital relationship notwithstanding husband's conviction of a morals offense for which he served a 2-year period of probation, condoned his conduct so as not to permit a divorce to be granted because thereof, where the original misconduct has not been repeated and he fulfilled the express conditions imposed.

2. SAME — CONDONATION — REPETITION OF ORIGINAL MISCONDUCT — BREACH OF CONDITION.

Only a repetition of the original misconduct or a breach of the express agreement upon which condonation was conditioned would relieve the condoning spouse of the bar of condonation in suit for divorce.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation §§ 223–237.
[2] 17 Am Jur, Divorce and Separation §§ 243–246.
[3] 17 Am Jur, Divorce and Separation § 228.
[4] 17 Am Jur, Divorce and Separation § 46 *et seq.*

3. SAME—EXTREME CRUELTY—CONDONATION—SUBSEQUENT CONDUCT.
  Decree of divorce to wife on ground of extreme cruelty is affirmed, not because bar of condonation had been raised, but where there is sufficient proof of recent conduct by defendant husband to support the trial judge's finding of cruelty.

4. SAME—EXTREME CRUELTY—EVIDENCE.
  Husband's treatment of his family with public and private disrespect and abuse, verbal and physical, and writing to 11-year-old son about disputes with plaintiff wife constituted extreme cruelty justifying grant of decree of divorce to wife.

Appeal from Washtenaw; Breakey, Jr. (James R.), J. Submitted January 5, 1962. (Docket No. 41, Calendar No. 48,978.) Decided May 18, 1962. Rehearing denied July 2, 1962.

Bill by Aileen L. MacKenzie against Russell C. MacKenzie for divorce on ground of cruelty. Cross bill asking that separate maintenance be awarded. Decree for plaintiff. Defendant appeals. Affirmed.

*James O. Kelly,* for plaintiff.

*Jack S. Dulgeroff (John W. Conlin,* of counsel on application for rehearing), for defendant.

SOURIS, J. Plaintiff wife, a physician, was awarded a decree of divorce on the ground of cruelty. She was also awarded custody of a minor child. Defendant, a dentist, appeals, claiming that some of the acts of cruelty relied upon by the chancellor in granting the divorce had been condoned, while other such acts had been provoked by plaintiff's own conduct. He claims that the record discloses no valid grounds for divorce.

The MacKenzies have been married for over 25 years. There were 2 children born to them, both of whom are now adults. In addition, however, there is an adopted son now 13 years of age. Plaintiff's

bill of complaint for divorce was filed in May of 1959, but an amended complaint was filed by her in January of 1960. Defendant filed a cross bill of complaint, also amended in January of 1960, for separate maintenance, and, after issue was joined on the bill and cross bill, hearings were held thereon over a period of 5 days. No appeal has been taken from the chancellor's failure to grant defendant relief on his cross bill.

We enter upon our review *de novo* of this record on appeal with profound misgivings concerning its inherent adequacy for the task assigned—misgivings of sufficient magnitude to warrant their expression by reference to the thoughtful, provocative book by Edmond Cahn, "The Moral Decision,"* p 117:

"[The] advantages of the court trial, indispensable as they are, serve only 1 main objective: finding out what a litigant *deserves* in connection with some *particular* transaction. If the transaction instead of being particular, involves his whole personality and domestic life, and the most intimate subtleties of his private relationships, then the trial in court—with its foreshortening of time, its lopping-off of details that appear irrelevant only to the outsider, and its inflaming of partisanship and animosity—the trial becomes an inadequate if not an actively harmful procedure. And if it is not the judging of desert that we are concerned with but the resolving, as wisely as may be, of an unsuccessful marriage, then again the forensic method of procedure is bound to be inappropriate. You can bring the parties into a trial court, but you cannot bring their broken marriage there. In court appear only the symptoms * * * which the testimony dramatizes beyond all sensible proportions, while the effective causes of the failure remain hidden outside."

This record demonstrates better than most how

---

* Indiana University Press, 1955.

difficult review of such cases can be. That these 2 people have existed, at least for the past 10 years, in a state of constant friction and intolerable tension can readily be discerned from the pages of this kaleidoscopic record of marital discord. Were incompatibility or irreconcilability statutory grounds for divorce in this State, we would have no difficulty affirming the chancellor's decree. Our difficulty arises from the fact that most of the evidence offered by plaintiff in support of her allegations of cruelty hardly merits the vehemence with which it was offered and with which it was sought to be answered. Much of it deals with ancient events dating back to 1950 through 1953, following which the parties apparently cohabited as husband and wife with no testimonial record of renewed conflict until 1958.

One event, in 1953, assumed crucial significance at the hearing and is the principal ground for which the decree of divorce was awarded. In 1953, defendant was convicted of a morals offense, for which he served a 2-year period of probation. Plaintiff continued the marital relation notwithstanding defendant's conduct and his conviction, thereby condoning, for our purposes, such conduct as grounds for divorce. However, plaintiff claims that continuation of that relationship was subject to certain express conditions, among which was his attending a psychiatrist for treatment. She testified that defendant carried out his agreement, but that after about a year and a half he became less interested in the family and more uncooperative and that "he began having temper tantrums again." Plaintiff concedes that to her knowledge there has been no recurrence of the conduct which led to defendant's conviction. However, she claims that defendant's general conduct toward her and the children and his "temper tantrums" strip him of the defense of condonation and permit her to rely upon the morals

offense of 1953 in support of her claim of cruelty. In this, plaintiff is mistaken, for it is only a repetition of the original misconduct or a breach of the express agreement upon which condonation was conditioned which will relieve her of the bar of condonation. See *Bierie* v. *Bierie,* 348 Mich 440, relied upon by plaintiff, and *Keenan* v. *Keenan,* 361 Mich 123, 127. Nothing in plaintiff's testimony regarding the agreement between the parties to continue their marital relationship after the 1953 offense supports her claim that it was expressly conditioned upon his continuing good behavior to her and to the children evermore. Such a condition imposed upon the beneficent act of condonation would pervert it into a perpetual Damoclean threat to the pitiful marriage "partner" whose misconduct was condoned. Here, 6 or 7 years had elapsed when the old scandal was publicly revived in this suit and several years elapsed after plaintiff herself claims defendant breached the conditions and before suit was filed. We hold that defendant's 1953 misconduct was condoned by plaintiff's continued cohabitation with him and his fulfillment of the express conditions imposed.

Notwithstanding the foregoing, however, we affirm the decree of divorce for the reason that our review of the record discloses sufficient proof of recent conduct by defendant to support the chancellor's finding of cruelty. Defendant displayed little or no regard for the feelings of his wife and family by his verbal abuse of them in public as well as privately. On 1 occasion he struck his wife, and although he claims it was with provocation, the evidence regarding this incident is not so clear that we are constrained to disregard the findings of the chancellor to the contrary. Finally, there were introduced in evidence 2 letters from defendant to the adopted son in which defendant's purpose was manifestly the subversion

of the boy's relationship with plaintiff. To say nothing of the cruelty demonstrated thereby to this youngster, who was then 10 or 11 years old, such letters could not but poison whatever relationship plaintiff was seeking to establish with the child. To treat his family with such public and private disrespect and abuse, verbal and physical, and to write the child as defendant did about his disputes with plaintiff, is extreme cruelty. See *McDuffee* v. *McDuffee*, 169 Mich 410, 412, for an interesting case where minor children were likewise used as pawns in marital warfare.

Affirmed. Costs to plaintiff.

Carr, C. J., and Kelly, Black, Kavanagh, Otis M. Smith, and Adams, JJ., concurred with Souris, J.

Dethmers, J., concurred in result.